UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| FRANK CHRISTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | Jury Demanded |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| TIRE DISCOUNTERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT**

Plaintiff sues Defendant and shows unto the Court as follows:

### I. JURISDICTION

1. The jurisdiction of this Court is invoked by Plaintiff pursuant to 42 U.S.C. §12117, and 28 U.S.C. §1331, to secure protection and redress for the deprivation of rights granted by the Americans with Disabilities Act ("ADA") providing for injunctive and other relief against disability discrimination in employment.

### II. NATURE OF PROCEEDING

2. This is a proceeding for back pay and benefits due to Plaintiff; for injunctive relief requiring Defendant to cease its discriminatory practices and to rehire Plaintiff to his former position; for compensatory damages; for damages for humiliation and embarrassment; punitive damages; prejudgment interest and attorney fees; and for such additional damages as may be necessary to effectuate the purposes of the ADA.

### III. THE PARTIES

3. Plaintiff is a resident of Catoosa County, Georgia.

4. Defendant is an Ohio corporation that conducts business and employs individuals to work at its stores located in Hamilton County, Tennessee.

5. Defendant's operations are sufficient to classify it as an "employer" within the meaning of 42 U.S.C. §12111(5)(a), subjecting Defendant to the provisions of the ADA.

## IV. FACTUAL BASES OF PLAINTIFF'S CLAIMS

6. Plaintiff was hired by Defendant in November 2015 as a Master Service Technician to work at one of Defendant's stores located in Hamilton County, Tennessee.

7. As Master Service Technician, Plaintiff supervised approximately five or six mechanics and tire technicians.

8. Plaintiff's primary duties were to diagnose complex automotive problems and to instruct the mechanics and technicians as to how to repair such problems.

9. As a Master Service Technician, Plaintiff generally did not have to lift heavy objects.

10. In July 2017, Plaintiff was involved in two separate workplace accidents which resulted in injury to his right knee and left acromioclavicular (AC) joint (hereinafter referred to as "disability"). Plaintiff made a workers' compensation claim for his disability, and he thereafter received medical treatment from multiple physicians over the next nine months through Defendant's workers' compensation program.

11. Following his workplace accidents in July 2017, Defendant placed Plaintiff on medical leave in late July 2017 through late November 2017, whereupon Defendant terminated Plaintiff's employment.

12. Upon notifying Plaintiff of his employment termination, Defendant's Human Resources representative, Lisa Snodgrass, advised Plaintiff that he would be eligible for

2

reemployment once he was released by the worker's compensation physician to return to work. Plaintiff indicated that he was eager to return to work as soon as possible.

13. Plaintiff's disability substantially limited his ability to lift. For example, from late July 2017 through mid-March 2018, Plaintiff's disability restricted him from lifting over 10 pounds, and for several months during this time period, Plaintiff was restricted from lifting over 3 pounds.

14. On May 24, 2018, the workers' compensation physician released Plaintiff to return to work with a 40-pound lifting restriction. The workers' compensation physician also assessed Plaintiff a 4% permanent impairment rating for his disability. The return to work release and physical lifting restriction was provided to Defendant.

15. Also on May 24, 2018, Plaintiff advised his former General Manager, Josh Gillespie, and Human Resources representative, Lisa Snodgrass, of his doctor's work release and his intention to return to employment with Defendant.

16. Josh Gillespie stated that he was interested in reemploying Plaintiff in his former job as Master Service Technician so long as he had approval from Human Resources.

17. Lisa Snodgrass advised Plaintiff that she was awaiting confirmation of Plaintiff's release to return to work from Defendant's workers' compensation department, and once she obtained this information, she would contact Plaintiff about reemployment. However, Ms. Snodgrass never contacted Plaintiff thereafter.

18. In July 2018, after waiting for communication from Ms. Snodgrass, Plaintiff went to Defendant's store where Plaintiff was previously employed. He spoke to Mr. Gillespie about reemployment. Mr. Gillespie admitted that he had asked his district manager for permission to reemploy Plaintiff, but his district manager stated that Plaintiff was too much of a liability because of his disability.

19. Mr. Gillespie was also told by Scott Riley, Vice President of Human Resources, that Plaintiff had to have a full 100% release (without any restrictions) in order for Plaintiff to be reemployed by Defendant.

20. In July 2018, Plaintiff called Ms. Snodgrass and reminded her that he had been released to return to work by his doctor and that he wanted to be reemployed. Ms. Snodgrass informed Plaintiff that he must apply on-line for employment with Defendant.

21. Based on his conversation with Ms. Snodgrass, Plaintiff went to Mr. Gillespie's store on July 18, 2018. With the help of Mr. Gillespie, Plaintiff completed an on-line application for employment with Defendant. Soon thereafter, he received a confirmation email that his job application had been received by Defendant. Plaintiff also called Human Resources and spoke with a representative who assured Plaintiff that the company had received his on-line application.

22. Thereafter, Plaintiff received no communications from Defendant.

23. On July 31, 2018, Plaintiff emailed Human Resources indicating once again that he was medically cleared to return to work and that he was interested in being reemployed.

24. Defendant has never contacted Plaintiff about reemployment.

25. Even with a 40-pound lifting restriction related to his disability, Plaintiff can perform the essential functions of the Master Service Technician position, with or without accommodations.

26. Defendant's managerial agents who, individually or together, decided to refuse to reemploy Plaintiff because of his disability acted intentionally with malice or with reckless indifference to the federally-protected rights of Plaintiff.

27. Defendant's managerial agents who, individually or together, applied the 100% healed policy to Plaintiff to unlawfully exclude him from eligibility of employment acted intentionally with malice or with reckless indifference to the federally-protected rights of Plaintiff.

## V. PLAINTIFF'S LEGAL CLAIMS

<u>Failure to Reemploy</u>

28.     Plaintiff is a qualified individual with a disability within the meaning of the ADA. Plaintiff has an actual disability; in the alternative, Plaintiff has a record of disability; or in the alternative, Defendant regarded Plaintiff as having a disability.

29.     Plaintiff's disability was the "but for" cause of Defendant's decision to refuse to reemploy Plaintiff.

30.     By refusing to reemploy Plaintiff because of his disability, Defendant violated the ADA, specifically 42 U.S.C. §12112(a).

<u>Illegal Qualification Standard – 100% Healed Policy</u>

31.     Pursuant to company policy, applied to Plaintiff by Scott Riley, Vice President of Human Resources, Defendant required that Plaintiff be free of any physical work restrictions (sometimes referred to as a "100% healed policy") as a qualification standard in order for Plaintiff to be eligible for reemployment with Defendant.

32.     Defendant's 100% healed policy, as it applied to Plaintiff, had the effect of screening out Plaintiff, who was and is now a qualified individual with a disability.

33.     Likewise, Defendant's 100% healed policy adversely affects, and tends to screen out, eligibility for employment of certain individuals with disabilities.

34.     Defendant's 100% healed policy – particularly as applied to Plaintiff – is not job-related or consistent with business necessity.

35.     By applying the 100% healed policy to Plaintiff as a qualification standard, Defendant violated the ADA, specifically 42 U.S.C. §§ 12112(a) and 12112(b)(3)(A) and (b)(6).

## VI.  ADMINISTRATIVE EXHAUSTION

36. On or about August 21, 2018, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission (EEOC), which was assigned Charge Number 494-2018-02737.  On February 26, 2019, the EEOC issued Plaintiff a Notice of Right to Sue.  Plaintiff brings this action within 90 days of the Notice of Right to Sue.

## VII.  DAMAGES

37. As a result of the wrongful actions of Defendant as described above, Plaintiff has suffered both financially and emotionally.  In particular, Plaintiff has lost and will continue to lose wages and valuable employee benefits.  In addition to the actual and financial loss Plaintiff has sustained, he has suffered emotional grief resulting from the embarrassment and humiliation which he experienced because of Defendant's illegal actions.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That Plaintiff be awarded judgment for damages for lost wages and employee benefits which he has lost from the date of Defendant's discriminatory actions;

c. That the Court issue an injunction requiring Defendant to reinstate Plaintiff, or in the alternative, to award front pay in lieu thereof;

d. That Plaintiff be awarded additional compensatory damages, including damages for humiliation and embarrassment, as are allowed pursuant to 42 U.S.C. §1981a;

e. That Plaintiff be awarded punitive damages pursuant to 42 U.S.C. §1981a;

f. That Plaintiff be awarded attorney fees, costs of this action, litigation expenses, and such other relief as the Court deems proper pursuant to the terms of the ADA; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury.

**BURNETTE, DOBSON & PINCHAK**

By: s/ *Doug S. Hamill*
Doug S. Hamill, BPR No. 22825
Attorney for Plaintiff
711 Cherry Street
Chattanooga, Tennessee 37402
Tel: (423) 266-2121
Fax: (423) 266-3324
dhamill@bdplawfirm.com